[No. 6424. Decided November 9, 1906.]

ANNIE SHANNON *et al., Respondents,* v. NORTHERN PACIFIC
RAILWAY COMPANY, *Appellant.*[1]

DAMAGES — EXCESSIVE VERDICT — EJECTION OF PASSENGER FROM
TRAIN. A verdict for $1,000 damages for the ejection of a woman
from a train, due to the mistake of a ticket exchanger, is excessive
and should be reduced to $500, where it appears that the same re-
sulted in a delay of but twenty-four hours, accompanied only by
such anxiety and annoyance as would ordinarily excite the mind of
a woman under such circumstances, and only a temporary illness by
reason of such excitement.

Appeal from a judgment of the superior court for Pierce
county, Snell, J., entered February 27, 1906, upon the ver-
dict of a jury rendered in favor of the plaintiffs for $1,000,
in an action for damages for ejecting a passenger from a
railway train. Affirmed on condition of remitting $500.

*B. S. Grosscup* and *A. G. Avery,* for appellant, on the point
that the verdict was excessive, cited the following as pas-
senger cases: *Atchinson etc. R. Co. v. Hogue,* 50 Kan. 40,
31 Pac. 698; *Sloane v. Southern R. Co.,* 111 Cal. 668, 44
Pac. 320, 32 L. R. A. 193; *Gillen v. Minneapolis etc. R. Co.,*
91 Wis. 633, 65 N. W. 373; *Terre Haute etc. R. Co. v. Van-
atta,* 21 Ill. 188, 74 Am. Dec. 96; *Chicago etc. R. Co. v.
Parks,* 18 Ill. 460, 68 Am. Dec. 562; *Georgia R. & Banking
Co. v. Eskew,* 86 Ga. 641, 12 S. E. 1061, 22 Am. St. 490;
*Cincinnati etc. R. Co. v. Cole,* 29 Ohio St. 126, 23 Am. Rep.
729; *Alabama etc. R. Co. v. Gibbs* (Miss.), 12 South. 545;
*Gulf etc. R. Co. v. St. John,* 13 Tex. Civ. App. 257, 35
S. W. 501; *Texas etc. R. Co. v. Dennis,* 4 Tex. Civ. App. 90,
23 S. W. 400; *Louisville etc. R. Co. v. Breckenridge,* 99
Ky. 1, 34 S. W. 702; *Chicago etc. R. Co. v. Chrisholm,* 79
Ill. 584; *Turner v. North Beach etc. R. Co.,* 34 Cal. 594;

[1]Reported in 87 Pac. 351.

21—44 WASH.

*Goins v. Western R. Co.*, 59 Ga. 426 ; *Central R. Co. v. Strick-
land*, 90 Ga. 562, 16 S. E. 352 ; *Illinois Central v. Cunning-
ham*, 67 Ill. 316 ; *Du Laurans v. St. Paul etc. R. Co.*, 15
Minn. 49, 2 Am. Rep. 102 ; *McLean v. Chicago etc. R. Co.*,
50 Minn. 485, 52 N. W. 966 ; *Norfolk etc. R. Co. v. Neely*,
91 Va. 539, 22 S. E. 367 ; *Norfolk etc. R. Co. v. Wysor*, 82
Va. 250.

*Govnor Teats*, for respondents.

HADLEY, J.—This is an action to recover damages based
upon the following facts: On August 31, 1904, the plaintiff
Annie Shannon purchased tickets at the defendant's ticket
office in Seattle, for the transportation of herself and minor
son from Seattle to Butte, Montana, over the defendant's
railway line. They went upon one of the defendant's trains
and occupied a tourist sleeper. The ticket exchanger came
around and took up the tickets, but negligently gave a receipt
with the wrong punch mark thereon as indicating the place
of destination. The receipt indicated Spokane instead of
Butte as the place of destination. They retired for the night
and the next morning a new conductor came aboard. What
occurred thereafter is perhaps best told in Mrs. Shannon's
own words, which we quote from her testimony as follows:

"I did not look at them any more until the conductor
came on in the morning, about twenty-five minutes to nine,
I think it was; and he asked for tickets. I didn't have any
tickets, so he looked at his envelopes and says: 'Your desti-
nation is Spokane?' I says: 'No, sir; it is Butte.' And he
went on. And he came back again and he said: 'No, your
destination is Spokane.' I said: 'No, I bought my tickets
in Seattle for my boy and myself and had signed them for
Butte.' So, he didn't seem—well, he said he would see if
there was a mistake, and he looked through his tickets again.
So he did not come around again, so I went to hunt him up
to ask if he had found the mistake, and I guess I must have
bothered him considerable, because he says: 'Madam, you
leave me alone,' that he would attend to them. So then I

went after one of the brakemen, and he said: 'Well, just keep after him.' And then he came back after awhile, and he said: 'You occupy berth number eleven?' I says: 'Yes; my boy is there now,' and I said 'I bought my tickets for Butte,' and I started to tell him over again about it; and he says: 'Now, madam, you occupy number eleven and right here shows Spokane, and how can you say you bought a ticket for Butte?' And so I told him I did; I signed the tickets there. So just then my boy asked what the trouble was, and I told him, and he called the conductor a liar. . . . I told him that my tickets were for Butte, and he wanted to know if I occupied number eleven and I said: 'Yes,' so he says: 'Well, now, madam, how can you say you bought tickets to Butte when the checks show Spokane. You occupy number eleven?' And I says: 'Yes.' So then my boy stuck in, and he went to strike him—

"Q. What did the boy say? A. He called him a liar. He says: 'Ma, what is the trouble?' and I says: 'He says we have no tickets for Butte; that they are only for Spokane,' and he says: 'He is a liar,' so he got angry— Q. Who did? A. The conductor did, and he stepped toward him as if he threatened to strike him, and a lady sitting there says to him: 'That boy was sick all night; don't hit him.' And he said: 'I don't care whether he was sick or not,' but he did not strike him; just stepped toward him. He was still in the berth. So he went on and didn't say anything more. I expected the conductor to speak to me again about the tickets, but he did not; and the brakeman told me to talk to him about the tickets, but I did not. So, later, just before I got off the train at Spokane, he come in and seemed quite anxious for me to keep my seat, and he said that the mistake would be discovered when we got to Spokane. So just before he left the train— Q. Where did he leave the train? A. At Spokane. So I kept my seat; and then two more men came on, and asked if Mrs. Shannon was in that car, and I told them that was my name. And he asked me where I was going, and I says: 'Butte,' and he says: 'Have you your ticket?' I says: 'No, sir; my ticket was lost on the train; and he says: 'Oh, madam, I could not listen to any story and talk like that. We hear that kind of talk every day.' I don't know which he did say. 'Well,' I says, 'I tell you that I bought them in Seattle,' and

he says: 'You had better get off the train and go to the ticket agent and get tickets for Butte, and if there is a mistake—if we find there is a mistake, your money will be refunded to you in Butte. So I went to do so, and I found I did not have enough money to buy them, so I went back to the train and started to tell them over again about it, and he took me by the arm, and he says: 'See here, madam, we are holding this train. We have held this train six minutes for you now, and you will have to get off the train and get off quick,' and so I started to get off the train. My baggage was not picked up nor anything; and so I got my things up and got out as quick as I could. They were in a rush, and insisted on me getting off, and told me I would have to get out. The conductor said: 'You had better get off here or we will put you off at the next stop, and it will be pleasanter for you to get off here.'

"Q. Then what did you do? A. Well, I went back to the ladies' waiting room. I felt bad and I stayed there. I cried. I felt ashamed to think I was treated so. And then a gentleman came over and asked me what the trouble was, and I told him they put us off the train. . . . I went to the superintendent'. He directed me to the superintendent's office, and I told him about it; and he said he had not heard anything about it until about twenty minutes before the train came in. I told him about it and he said he would see if anything could be done about it. So I waited around the depot till I think about seven o'clock that evening; and I went up to the office several times, and sometimes they would notice me and sometimes not. And one time I went up there to see if they had discovered the mistake, and they said the line was down. So I went back to the depot and waited for awhile and then went back again, because I could not rest until I found out about the mistake. And so I told him it was getting late, and I was a stranger, and my boy was not well, and I showed him where I got a room and told him if he found the mistake, why, to let me know; and when he did he came in the morning and told me this. All that night I was sick. I did not eat anything the night before. I did not eat any breakfast, dinner nor supper that day."

The above is a substantial statement of what occurred, using Mrs. Shannon's own description. The mistake having

been discovered, the tickets were found and returned to Mrs. Shannon the next morning, and she and her son then proceeded to Butte on one of the defendant's trains. The suit was brought by Mrs. Shannon and her husband. The answer admits the mistake of the ticket exchanger. The cause was tried before a jury, and a verdict for plaintiffs was returned in the sum of $1,000. . The defendant moved for a new trial, which was denied, and judgment was entered for the amount of the verdict. This appeal is from the judgment.

The motion for new trial specified as one of its grounds that the verdict is excessive, and the chief contention in this court is that the trial court erred in not granting a new trial for that reason. This court is of the opinion that the verdict is excessive. The respondent, Mrs. Shannon, was subjected to annoyance and anxiety by reason of the circumstances, and the testimony shows that she was ill during the night she remained over at Spokane, produced probably by her worry and anxiety over the affair. The illness, however, appears to have been of a temporary character only. Such annoyance and inconvenience are very exasperating to a traveler, and the appellant is clearly liable in some amount, since the whole trouble arose from the carelessness of its ticket exchanger. The resulting delay was, however, for twenty-four hours only, accompanied with the anxiety that would ordinarily excite the mind of any lady subjected to the same circumstances. We think, however, that upon no fair basis for estimating actual money damages can respondent be said to have sustained damages to the extent of $1,000. We think $500 would abundantly compensate her, and that judgment should not be awarded for a greater sum.

The cause is therefore remanded to the trial court with instructions to vacate the judgment upon the return of the remittitur herein, and if within twenty days thereafter the respondents shall, in writing, remit $500 from the amount of

the verdict, the court shall then enter judgment against appellant for $500. Otherwise it shall grant a new trial.

Mount, C. J., Fullerton, Rudkin, and Dunbar, JJ., concur.

Root and Crow, JJ., took no part.